UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00120-GNS

BLUEGRASS ORAL HEALTH CENTER, PLLC                                                    PLAINTIFF

v.

THE CINCINNATI INSURANCE COMPANY                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 9).  The motion is ripe for adjudication.  For the following reasons, the motion is **GRANTED**.

### I.  STATEMENT OF FACTS

On March 6, 2020, the Commonwealth of Kentucky declared a state of emergency due to the outbreak of the COVID-19 virus.  (Pl.'s Notice Removal Ex. A, ¶ 6, DN 1 [hereinafter Compl.]).  On March 23, the Commonwealth's Cabinet for Health and Family Services, Office of Legal Services ("Cabinet") directed that all non-emergent medical, surgical, dental, or other health care practices or procedures cease effective the close of business on March 18, 2020 ("Cabinet Order").  (Compl. ¶ 6).  Plaintiff Bluegrass Oral Health Center ("BOHC") complied with the Cabinet Order, which allegedly resulted in the closing of its dental practice.  (Compl. ¶ 7).

At the time of Cabinet Order, BOHC had a policy of insurance ("Policy") issued by Defendant Cincinnati Insurance Company ("CIC"), which was effective from February 13, 2020, to August 1, 2022.  (Def.'s Mot. Dismiss Ex. B, at 1, DN 9).  BOHC's coverage is provided through a Building and Personal Property Coverage Form and Business Income (and Extra Expenses) Coverage Form.  (Def.'s Mot. Dismiss Ex. B, at 20-59, 110-18).  The "Building and Personal Property Coverage Form" is the main property coverage form, and the "Business Income (and

Extra Expenses) Coverage Form", focuses on business income and expense. (Def.'s Mot. Dismiss 8). Using similar language, both forms provide "Business Income", "Extra Expenses", and "Civil Authority" coverage. (Def.'s Mot. Dismiss Ex. B, at 37-38, 110-11).

BOHC filed a claim with CIC under the Policy for lost income and expenses due to the Cabinet Order's effect of prohibiting access to its premises, which claim was denied by CIC. (Compl. ¶¶ 5, 11, 13). BOHC then filed a lawsuit in Warren Circuit Court, Kentucky, alleging breach of contract by CIC. (Compl. 1). CIC removed the case to this Court on diversity grounds and has moved to dismiss BOHC's claims. (Pl.'s Notice Removal 2, Def.'s Mot. Dismiss, DN 9).

## II. STANDARD OF REVIEW

Motions pursuant to Fed. R. Civ. P. 12(b)(6) require the Court "to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998).

## III. DISCUSSION

In asserting its claim for breach of contract, BOCH relies on the "Civil Authority" provisions in the Policy. (*See* Compl. ¶ 5; Pl.'s Resp. Def.'s Mot. Dismiss 2-3, 8). These provisions provide:

> When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
> **(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
> **(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property. This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

> This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:
> **1)** 30 consecutive days after the time of that action; or
> **2)** When your "Business Income" coverage ends; whichever is later.

(Def.'s Mot. Dismiss Ex. B, at 38, 111). A "Covered Cause of Loss" is defined in the Policy as a "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Def.'s Mot. Dismiss Ex. B, at 24, 111). A "loss" is defined, in relevant part, as "accidental *physical* loss or accidental *physical* damage." (Def.'s Mot. Dismiss Ex. B, at 57, 118 (emphasis added)). Accordingly, coverage under any provision requires BOHC allege a "direct physical loss" or "direct physical damage". Furthermore, under "Civil Authority" provisions, the direct physical loss must occur to property "other than Covered Property at a 'premises' . . . ." (Def.'s Mot. Dismiss Ex. B, at 38, 111).

CIC argues a direct physical loss requires actual, tangible, permanent, physical alteration of property, and that BOHC cannot allege a direct physical loss on its property or any other when based simply on the COVID-19 virus. (Def.'s Mot. Dismiss 11, 15). BOHC argues the term "physical loss", as defined in the Policy, is at least ambiguous and that COVID-19 "contamination" should qualify as a "physical loss". (Pl.'s Resp. Def.'s Mot. Dismiss 4, 8).

Where jurisdiction is exercised by this Court based on diversity of citizenship, the substantive law of Kentucky governs the dispute. *Rutherford v. Columbia Gas*, 575 F.3d 616, 623 (6th Cir. 2009). Construction of insurance contract provisions are questions of law for the Court to determine unless facts are in dispute. *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994). Under Kentucky law, the burden is on the insured to establish coverage. *N. Am. Accident Ins. Co. v. White*, 80 S.W.2d 577, 578 (Ky. 1935). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a

3

part of the policy." KRS 304.14-360. Courts seek to determine the intention of the parties according to the language of the contract. *K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 753 (Ky. App. 2005). Public policy with respect to insurance contracts dictates "the contract should be liberally construed and any doubts resolved in favor of the insured." *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006) (citation omitted). Kentucky courts have recognized, however, that "[a] liberal interpretation is not synonymous with a strained one." *K.M.R.*, 171 S.W.3d at 753.

"When no ambiguity exists in the contract, [the Court] look[s] only as far as the four corners of the document to determine the parties' intentions." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (citation omitted). A term is ambiguous if it is susceptible to two or more reasonable interpretations. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). "[I]f the court determines that contractual language is susceptible to two reasonable interpretations, it must resolve the ambiguity in favor of the insured." *Stamper v. Hyden*, 334 S.W.3d 120, 123 (Ky. App. 2011). "An ambiguity may either appear on the face of the policy or . . . when a provision is applied to a particular claim." *Id.* "The mere fact that [a] [party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. App. 1997). Unless the terms contained in an insurance policy have acquired a technical meaning in law, they "must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.,* 704 S.W.2d 205, 206 (Ky. 1986) (citation omitted).

Neither party has directed the Court to a Kentucky case defining direct physical loss. CIC instead cites to the approach adopted by courts throughout the country that a direct physical loss requires a tangible structural alteration of property. *See, e.g.*, 10A Steven Plitt et al., *Couch on Insurance* § 148:46 (3d ed. Dec. 2020 update) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."); *Source Food Tech., Inc. v. U.S. Fid. & Guaranty Co.*, 465 F.3d 834, 838 (8th Cir. 2006); *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990); *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38 (2d Cir. 2003); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005); *Ne. Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *5 (N.D. Ga. May 23, 2014); *Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612, 616 (E.D. Va. 1999); *Wolstein v. Yorkshire Ins. Co.*, 985 P.2d 400, 407-08 (Wash Ct. App. 1999); *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 835-36 (Tex. Ct. App. 1996).

CIC further cites to a plethora of recent cases considering this issue in the context of COVID-19 and denying coverage, finding the term physical loss unambiguously requires more than harm resulting from a government shutdown or from the COVID-19 virus, itself.[1] (Def.'s Notice Suppl. Authority, DN 14; Def.'s Notice Suppl. Authority, DN 15). For instance, in *10E, LLC v. Travelers Indemnity Co. of Connecticut*, the court held that no business income coverage

---

[1] *See, e.g.*, *10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F. Supp. 3d 828, 836 (C.D. Cal. 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Ct. Aug. 06, 2020).

existed for losses incurred when the insured's restaurant was closed because of a governmental order under a policy requiring direct physical loss of or damage to property. *See 10E, LLC*, 483 F. Supp. 3d at 832, 835. The court held:

> Plaintiff does not plausibly allege that it suffered "direct physical loss of or damage to property" as required for Business Income and Extra Expense coverage.
>
> . . .
>
> Under California law, losses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." "Detrimental economic impact" does not suffice.

*Id.* at 835-86 (internal citation omitted) (citation omitted); *see also Webb Dental Assocs. DMD, PA v. Cincinnati Indem. Co.*, No. 1:20-CV-250-AW-GRJ, 2021 WL 800113, at *1-2 (N.D. Fla. Jan. 15, 2021) (holding that "the policy's plain, unambiguous language indicates the property must suffer an 'accidental physical loss or accidental physical damage,' before any business income loss is covered. . . . But [the] [insured] acknowledges there has been no physical damage to the property. That is enough to doom its claim.").

Although not directly cited by the parties,[2] *Studio 417, Inc. v. The Cincinnati Insurance Company*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), dealt with identical language in a CIC insurance policy for claims of lost business income from government-ordered shutdowns due to the COVID-19 pandemic. The insureds contended that because their CIC policy provided coverage for "physical loss or physical damage", "loss" was distinct from "damage" and that "loss" must be read to include loss of use. *Id.* at 800. Noting that the policy defined neither loss nor damage, the

---

[2] Def.'s Notice Suppl. Authority Ex. B, at 9, DN 14-2.

court accepted a dictionary definition of loss as "the act of losing possession" and held that the insureds adequately alleged a "direct physical loss". *Id*.

Although *Studio 417* involves the same language from a CIC policy as at issue here, the Court declines to follow this decision. First, the plaintiff in *Studio 417* claimed that "COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it unsafe and unusable, resulting in direct physical loss to the premises and property." *Studio 417*, 478 F. Supp. 3d at 800 (internal quotation marks omitted). By contrast, Plaintiff here makes no allegation that its premises was actually contaminated. *See Robert E. Levy D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, No. 4:20-CV-00643-SRC, 2021 WL 598817, at *10 (E.D. Mo. Feb. 16, 2021). Further, although *Studio 417* appropriately references a standard dictionary to discern the ordinary meaning of "loss", the court utilized a secondary definition of loss to support its conclusion that "direct physical loss" covered the loss of use of the insured business premises due to COVID-19 restrictions. *Id*. Utilizing *Merriam-Webster's* primary definition of "loss", however, leads to a different conclusion and better harmonizes the policy language. The primary dictionary definition of loss is "destruction" or "ruin". *Loss*, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last visited Mar. 17, 2021). Thus, in context, "physical loss" would mean destruction or ruin produced by the forces or operation of physics. *Physical*, Merriam-Webster, https://www.merriam-webster.com/dictionary/physical (last visited Mar. 17, 2021). In this light, "physical loss" would apply to property destroyed by some force, contrasted with "physical damage" which would cover a lesser extent of harm short of destruction or ruin. Thus, the policy would extend to the continuum of harm from total (loss) to partial (damage) resulting in alteration to an insured property. *See Robert E. Levy D.M.D., LLC*, 2021 WL 598817, at *11. This is a far more reasonable construction than interpreting "direct physical loss" to mean "direct

7

physical loss of use", which frankly makes no sense. The great weight of decisions recently considering this issue in the midst of the current pandemic have reached the same conclusion. *See, e.g.*, *10E, LLC*, 483 F. Supp. 3d at 836; *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Ct. Aug. 06, 2020); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 500 (E.D. Mich. 2020) (citing Merriam Webster's definition of "loss" to reject the interpretation of loss as, *inter alia*, loss of use); *Kirsch v. Aspen Am. Ins. Co.*, No. 20-11930, 2020 WL 7338570, at *5 (E.D. Mich. Dec. 14, 2020) (same); *Fam. Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-CV-01922, 2021 WL 615307, at *5 (N.D. Ohio Feb. 17, 2021) (same); *Ceres Enters., LLC v. Travelers Ins. Co.*, No. 1:20-CV-1925, 2021 WL 634982, at *5 (N.D. Ohio Feb. 18, 2021) (same); *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, No. 2:20-CV-2035, 2021 WL 858489, at *6 (S.D. Ohio Mar. 8, 2021) (same).

BOHC argues the policy is ambiguous as to whether virus "contamination" qualifies as direct physical loss. (Pl.'s Resp. Def.'s Mot. Dismiss 4). For support, BOHC cites to the definition of "Covered Cause of Loss", as a "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Pl.'s Resp. Def.'s Mot. Dismiss 4; Def.'s Mot. Dismiss Ex. B, at 24). In turn, BOHC references two exclusions from the definition of a "loss": one for loss caused by "[n]uclear reaction or radioactive contamination, however caused[,]" and another for loss caused by the "presence, growth, proliferation, spread or any activity of 'fungi', wet or dry rot or bacteria[,]" unless the fungi, wet or dry rot, or bacteria "results from fire or lightening . . . ." (Pl.'s Resp. Def.'s Mot. Dismiss 4-5; Def.'s Mot. Dismiss Ex. B, at 496, 497-98). BOHC contends these exclusions show radioactive contamination and bacterial infestation would have qualified as physical loss or damage, and therefore, "it necessarily follows that contamination with the novel Coronavirus can

8

qualify as well." (Pl.'s Resp. Def.'s Mot. Dismiss 5). Plaintiff's contamination argument fails, first because nowhere in the Complaint does it allege that its dental offices were actually contaminated, as noted above. Further, it is elementary that "an exclusion cannot grant coverage . . . ." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002). "Since [this Court] conclude[s] that there is no coverage in this case because there was no [loss], we need not examine any exclusions." *Cincinnati Ins. Co.*, 306 S.W.3d at 78 n.35. BOHC's attempt to expand the scope of the Policy by analogizing to exclusions is rejected.

Finally, BOHC's claim for "Civil Authority" coverage also fails because the Policy language plainly requires a "Covered Cause of Loss" to property "*other than Covered Property at a 'premises'* . . . ."[3] (Def.'s Mot. Dismiss 17; Def.'s Mot. Dismiss Ex. B, at 38, 111 (emphasis added)). "Premises" is defined as the "Locations and Buildings described in the Declarations". (*See, e.g.*, Def.'s Mot. Dismiss Ex. B, at 58, 529). BOHC's Complaint fails to reference any loss to property other than its insured premises. In fact, in its response, BOHC's rests its argument on the contention that the policy provides coverage for the contamination of its own premises. (Pl.'s Resp. Def.'s Mot. Dismiss 8 (emphasis added)).

The "Civil Authority" coverage sought by BOHC requires a claim for a tangible loss to property other than the insured property, which BOHC has failed to identify. Further, the Civil Authority coverage does not apply because there is no allegation that BOHC lost access to its business due to damage to surrounding property. *See also Riverside Dental of Rockford, Ltd. v.*

---

[3] The only policy provision referenced by BOHC is the "Civil Authority" coverage cited in its Response. (*See* Pl.'s Resp. Def.'s Mot. Dismiss 2-3, 8). To the extent BOHC alleges coverage under the "Business Income and Extra Expenses" provisions through either the "Building and Personal Property Coverage Form" or the "Business Income (and Extra Expenses) Coverage Form", each provision requires the same "Covered Cause of Loss", and therefore, the same result applies. (*See* Def.'s Mot. Dismiss Ex. B, at 37-38, 110-11).

9

*Cincinnati Ins. Co.*, No. 20 CV 50284, 2021 WL 346423, at *5 (N.D. Ill. Jan. 19, 2021) ("Plaintiff's Business Income loss is not covered under the Civil Authority coverage provisions of the policy at issue in this case because the Governor's Orders did not prohibit access to plaintiff's dental office."). Accordingly, the Court will dismiss BOHC's claims.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss (DN 9) is **GRANTED**, and the Complaint is **DISMISSED**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 18, 2021

cc: counsel of record